UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


East Coast Serv. Indus. Co. Inc.,
d/b/a Whiskeys 20, Thomas Svoleantopoulos,
and Rosalie Sweeney

     v.                                    Civil No. 19-cv-1182-JD
                                              Opinion No. 2020 DNH 164
N.H. State Liquor
Commission, et al.



O R D E R

East Coast Service Industry ("Whiskeys 20"), Thomas

Svoleantopoulos, and Rosalie Sweeney brought this suit alleging

violations of the federal constitution and state law against the

New Hampshire State Liquor Commission (the "Commission") and its

employees.[1]  The suit also names the City of Manchester, the

Manchester Police Department, and various officers and employees

of the City of Manchester and the Manchester Police Department.[2]

The Commission and its employees move to dismiss the claims in

the Amended Complaint.  The plaintiffs object.

---

[1] The Commission's employees named as defendants are Matthew
Elliot, Nicolas Cutting, Danielle Ellston, Matthew Culver,
Ashley Wright, Joseph S. Plaia, and John Doe 1, and will be
referred to collectively as the "employees" except when
individually named.

[2] The City of Manchester, the Manchester Police Department,
and their officers or employees did not respond to the Amended
Complaint and there is no proof of service or completed waiver
of service filed in the case.

Standard of Review

In considering a motion to dismiss, the court asks whether the plaintiffs have made allegations that are sufficient to render their entitlement to relief plausible.  Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).  The court accepts all well-pleaded facts as true and draws all reasonable inferences in the non-moving party's favor.  Hamann v. Carpenter, 937 F.3d 86, 88 (1st Cir. 2019).  The court, however, disregards conclusory allegations that simply parrot the applicable legal standard.  Manning, 725 F.3d at 43.  To determine whether a complaint survives a motion to dismiss, the court should use its "judicial experience and common sense," but should also avoid disregarding a factual allegation merely because actual proof of the alleged facts is improbable.  Id.

The plaintiffs attached several documents to the Amended Complaint.  When evaluating a motion to dismiss, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice."  R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).  The court may also consider "documents the authenticity of which are not disputed by the parties," official public records, documents central to the plaintiff's claim, and documents sufficiently referenced in

2

the complaint.  Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

## Background

The plaintiffs operate "Whiskeys 20," a "restaurant and late-night lounge" in Manchester, New Hampshire.  Doc. 13 ¶¶ 1, 23.  Broadly, the plaintiffs allege that the Commission and its employees violated the federal constitution and New Hampshire state law by abusing their regulatory powers over alcohol sales, treating them differently than other liquor license holders, and subjecting them to unreasonable searches.

### A.  New Hampshire Liquor Commission and Liquor Licenses

New Hampshire prohibits the sale of any liquor or alcoholic beverage without a liquor license issued by the Commission.  RSA 178:1, I; see RSA 178:2, I ("The commission may issue licenses . . . .").  On October 27, 2015, the Commission granted Whiskeys 20 a restaurant license.  A restaurant license allows its holder to prepare, cook, and serve food in addition to selling alcoholic beverages.

B. <u>September 29, 2016, Surveillance, Inspection and
   Warnings</u>

On an unknown date after it was issued a liquor license,[3]
Whiskeys 20 complained to the Commission that defendant Matthew
Elliot, an investigator with the Commission, "had entered
Whiskeys 20, allegedly with a warrant, and threatened to arrest
Mr. Svoleantopoulos."  Doc. <u>13</u> ¶ 49.  Then, in October 2016,
Whiskeys 20 wrote another complaint to the Commission, asserting
that Elliot and Nicolas Cutting, another investigator with the
Commission, had retaliated against it for making the earlier
complaint.

Specifically, in the October 2016 complaint, Whiskeys 20
wrote that, on September 29, 2016, Elliot had "engaged in
surveillance of Whiskeys 20 for 30 minutes outside the
establishment."  <u>Id.</u> ¶ 50.  "After conducting that surveillance,
Mr. Elliot and Mr. Cutting approached Mr. Svoleantopoulos, and
Mr. Elliot criticized him about providing safe transportation
for a customer."  <u>Id.</u>  Elliot also told Svoleantopoulos that he
was "lucky" because they had found an intoxicated customer
outside as opposed to inside Whiskeys 20.  <u>Id.</u>

---

[3] The Amended Complaint does not indicate when Whiskeys 20
filed the complaint with the Commission.  <u>See</u> doc. <u>13</u> ¶¶ 48-49.

Later the same evening, Elliot provided Svoleantopoulos a
"verbal warning" for having a "disorderly premises" because
there was liquor spilled in the hallway near the bathroom.  Id.
¶ 51.  Svoleantopoulos told Elliot that the spill was water and
was coming from a bathroom toilet.  Elliot also provided a
verbal warning based on an observation that a person was
drinking in the bathroom hallway.  Whiskeys 20 alleges that
Elliot's observation was false.

Finally, "Whiskeys 20 learned it was issued another verbal
warning on September 29 for a 'statement from [a] purchaser as
to age.'"  Id. ¶ 52.  Whiskeys 20, however, asserts that the
purchaser was over twenty-one and that Elliot never questioned
Svoleantopoulos about the purchaser.

C. September 2018 Violations and Settlement Agreement

In late 2018, the Commission issued three "Administrative
Notices of Agency Action" to Whiskeys 20, alleging violations of
state liquor laws and regulations.  In the administrative
notices, the Commission alleged that, 1) on September 22, 2018,
Whiskeys 20 served an alcoholic beverage to a visibly
intoxicated person; 2) on July 6, 2018, Whiskeys 20 served an
alcoholic beverage to an underage person; and 3) on July 6,
2018, Whiskeys 20 accepted photographic identification that was

expired or inconsistent with the appearance of the person who presented it.  Id. ¶ 58.

The plaintiffs allege that, on April 18, 2019, the Commission and, "upon information and belief," Culver, "forced" Whiskeys 20 to sign a Settlement Agreement[4] instead of having an adjudicatory hearing on the allegations.  Id. ¶ 62.  Three persons signed the Settlement Agreement: Joseph Plaia; John Doe 1,[5] on behalf of "Enforcement & Licensing"; and Svoleantopoulos, on behalf of Whiskeys 20.

Under the Settlement Agreement, Whiskeys 20 had to pay a fine, its liquor license was suspended for several days, and it was assessed eight "points" to its liquor license.  Among other terms in the Settlement Agreement, Whiskeys 20 had to offer "full course meals" to its customers, it was prohibited from offering shots to anyone on the premises, and it was prohibited from permitting entry to any customers under twenty-one years of age after nine p.m.  Id. ¶ 63; doc. 13-3.  It was also prohibited from hosting an "under 21 night."  The Commission conditioned the renewal of Whiskeys 20's liquor license on these terms.

---

[4] The Settlement Agreement is attached to the Amended Complaint.  Doc. 13-3.

[5] Doe's signature on the document is illegible.

D. Police Calls, Police Detail, and Liquor Commission
   Inspections

The plaintiffs allege that the City of Manchester and the
Manchester Police Department have required Whiskeys 20 to have a
police detail "every weekend."  Doc. 13 at 3.  The plaintiffs
allege that, in the first part of 2019, "the number of calls
made to Manchester PD for service at Whiskeys 20 for various
incidents and/or events was lower than the calls made to two
neighboring bars," Club Manchvegas and McGarvey's.  Id. ¶ 69.
According to the Amended Complaint, in 2017, 295 calls were made
to Manchester PD for service at Whiskeys 20.  In 2018, 191 calls
were made.  Ten calls were made through March 2019.

The plaintiffs allege that despite Whiskeys 20's "pristine
record" for calls to the police, defendants Elliot, Cutting,
Danielle Ellston, Culver, and Ashley Wright have conducted "over
40 premises inspections of Whiskeys 20" between 2017 and March
2019 and have "conducted video and audio surveillance of
Whiskeys 20's employees."  Id. ¶ 72.  The plaintiffs allege that
other bars – such as Club Manchvegas and McGarvey's – have not
received the same volume of inspections from the Commission.

In June 2019, Whiskeys 20 requested that the police detail
be limited or eliminated.  On June 26, the Manchester Police
Department informed Whiskeys 20 that the police detail would not
be eliminated.  Each police detail costs Whiskeys 20

"approximately $258."  Doc. 13 ¶ 84.  Whiskeys 20 has an outstanding balance of $3,000 for unpaid police detail invoices.

### E. July 2019 Overservice Allegations

On July 31, 2019, the Commission issued administrative notices to Whiskeys 20, alleging that on June 23, 2019, it had sold an alcoholic beverage to a visibly intoxicated individual. Another violation notice alleged that Whiskeys 20 had allowed patrons to self-serve alcoholic beverages.  On June 24, the Commission placed a hold on Whiskeys 20's liquor license renewal, which was set to expire on July 31.  The Commission, however, extended Whiskeys 20's license through December 2, 2019, without a renewal.

Whiskeys 20 disputed the administrative notices.  On November 5, 2019, after a witness to the alleged overservice recanted prior statements to the Commission, the Commission informed Whiskeys 20 that it had elected not to pursue the administrative notices further.  The Commission, however, stated that it would perform an "audit" of Whiskeys 20 prior to granting a full renewal of its license.  Whiskeys 20 alleges that it was difficult to schedule events and order alcoholic beverages while its license was pending expiration.

F.   Claims

The plaintiffs' Amended Complaint contains seven counts:

- Count I: declaratory judgment;

- Count II: violation of equal protection rights under
  the Fourteenth Amendment;

- Count III: violation of procedural due process rights
  under the Fourteenth Amendment;

- Count IV: violation of Fourth Amendment;

- Count V: tortious interference with advantageous
  economic advantages with New Hampshire consumers;

- Count VI: intentional infliction of emotional
  distress; and

- Count VII: Negligent infliction of emotional distress.

Count I is brought against the Commission, Plaia, and Doe, and
Counts II through VII are brought against all defendants.  The
claims are brought against the defendants in both their official
and individual capacities.

The plaintiffs "seek damages of $20 million, exclusive of
any punitive damages to which they are entitled, and recovery of
their attorney's fees and costs."  Doc. 13 at 3.  Whiskeys 20
also seeks injunctive relief prohibiting the defendants from
engaging in unlawful conduct as alleged in Counts II through IV.


Discussion

The Commission and employees move to dismiss all claims
against them in both their official and individual capacities.
The plaintiffs oppose dismissal of the claims.  The Commission

and employees filed a reply, and the plaintiffs filed a surreply.

I.   <u>Eleventh Amendment of the United States Constitution</u>

The Commission and employees argue that they are immune from suit in their official capacities under the Eleventh Amendment.[6]  The plaintiffs do not articulate an objection to dismissal of the Commission as to Counts I through VII or to dismissal of the employees in their official capacities as to Counts V through VII, on the basis of Eleventh Amendment immunity.  The Commission is dismissed as a party defendant in Counts I through VII.  The employees in their official capacities are dismissed as parties in Counts V through VII.

Whiskeys 20 objects to dismissal of the employees in their official capacities as to Counts I through IV.  It contends that, in Counts I through IV, it seeks prospective injunctive relief against the employees.  Whiskeys 20 argues that the Eleventh Amendment does not bar suits that seek prospective injunctive relief against individuals in their official capacities.  The employees replied only as to Count I, which is

---

[6] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

a declaratory judgment claim against employees Plaia and Doe
that challenges the validity of the Settlement Agreement based
on a New Hampshire regulation.

    A.   Immunity for Plaia and Doe as to Count I

Employees Plaia and Doe in their official capacities are
entitled to Eleventh Amendment immunity as to Count I.  "Absent
an explicit waiver from the state, the Eleventh Amendment bars
official capacity suits against state actors in federal court
unless the suit seeks prospective injunctive relief." Caisse v.
DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (citing Rosie D. v.
Swift, 310 F.3d 230, 234 (1st Cir. 2002)).  The exception to
Eleventh Amendment immunity discussed in Caisse applies only
where prospective injunctive relief corrects ongoing violations
of federal law.  Swift, 310 F.3d at 234; see also Ex parte
Young, 209 U.S. 123, 159-60 (1908).  In Count I, Whiskeys 20
does not allege any violation of federal law, and it seeks
declaratory relief rather than prospective injunctive relief.
Therefore, the Eleventh Amendment applies to Plaia and Doe in
their official capacities as to Count I.  See Swift, 310 F.3d at
234.

B. Waiver

In its surreply, Whiskeys 20 asserts that employees Plaia
and Doe failed to raise Eleventh Amendment immunity as to Count
I in their motion to dismiss.  Whiskeys 20 contends that Plaia
and Doe raised the argument for the first time in their reply
brief.  Therefore, Whiskeys 20 contends, Plaia and Doe have
waived their Eleventh Amendment immunity for this litigation.[7]

In certain circumstances, a state's "affirmative conduct in
litigation" can result in its waiver of Eleventh Amendment
immunity for the litigation.  See New Hampshire v. Ramsey, 366
F.3d 1, 15-18 (1st Cir. 2004).  The motion to dismiss could have
more clearly asserted that Plaia and Doe, like the Commission,
raised Eleventh Amendment immunity as to Count I.  Nevertheless,
the employees clarified their position in their reply and made
no affirmative statement of waiver.  Moreover, it would be
unusual and inconsistent for the defendants to assert immunity
as to the Commission while waiving immunity for its employees.
In these circumstances, the employees stand in the place of the
Commission, which is the real party in interest in Count I,

---

[7] Alternatively, Whiskeys 20 asks the court to decline to
consider the immunity defense for Plaia and Doe on the ground
that it was raised for the first time in a reply brief.  If the
court were to take that route, Plaia and Doe could raise the
defense later.  See Acevedo Lopez v. Police Dep't of Com. of
Puerto Rico, 247 F.3d 26, 28 (1st Cir. 2001) ("Eleventh
Amendment immunity can be raised at any time because of its
jurisdictional implications.").  Therefore, the defense will be
addressed here.

because any decree that the Settlement Agreement is invalid would operate against the Commission.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-102 (1984) ("[R]elief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."). For those reasons, Plaia and Doe did not by their conduct waive Eleventh Amendment immunity for the purpose of this litigation. See Ramsey, 366 F.3d 1, 15-18.  Count I is dismissed as to employees Plaia and Doe in their official capacities.

II.   Remaining Claims Against Employees

The employees move to dismiss the remaining claims against them after application of the Eleventh Amendment.  The remaining claims against the employees are Count I (declaratory judgment) as brought against Plaia and Doe in their individual capacities, Counts II through IV (constitutional claims) against all the employees in both their individual and official capacities, and Counts V through VII (state tort claims) against all the employees in their individual capacities.  The plaintiffs object to dismissal of these claims.

A.   Declaratory Judgment (Count I)

The employees argue that Plaia and Doe are incorrectly named as defendants in Count I, which is Whiskeys 20's

declaratory judgment claim challenging the validity of the
Settlement Agreement.  They argue that there is no actual
controversy between Plaia, Doe, and Whiskeys 20 because the
Settlement Agreement sets forth legal relations only between the
Commission and Whiskeys 20.  Whiskeys 20 responds, arguing that
"this Agreement was never binding on, and could not have been
legally approved by, NHSLC.  Thus, the only interested parties,
for purposes of the Agreement and Count I, are Whiskeys 20 and
Defendants Plaia and John Doe 1."  Doc. 25 at 5-6.

The Settlement Agreement purports to be an agreement
between the Commission and Whiskeys 20.  Doc. 13-3 ("The New
Hampshire Liquor Commission accepts the above settlement subject
to the terms and conditions set forth in this agreement.").
Nowhere does the Settlement Agreement suggest that it is an
agreement between Whiskeys 20, Plaia, and Doe.  Rather, Plaia
and Doe signed as agents of the Commission and "Enforcement &
Licensing," respectively.  Doc. 13-3.

Whiskeys 20 has not alleged facts to show that Plaia and
Doe have any legal interest in the validity or invalidity of the
Settlement Agreement in their individual capacities.[8]  Instead,

---

[8] Whiskeys 20 also argues that, because the Settlement
Agreement is invalid, the signatories are interested parties.
Whiskeys 20 does not show, however, that allegations of
invalidity transform the agreement to one between Whiskeys 20
and the individuals who signed on behalf of the Commission.

they signed as agents of a government entity, that is, the
Commission.  Therefore, Count I does not state a claim against
Plaia and Doe in their individual capacities.  Kentucky v.
Graham, 473 U.S. 159, 165-66 (1985) ("Personal-capacity suits
seek to impose personal liability upon a government official for
actions he takes under color of state law. . . .  Official-
capacity suits, in contrast, generally represent only another
way of pleading an action against an entity for which an officer
is an agent.") (citations and quotation marks omitted).

    For those reasons, Count I is dismissed as brought against
Plaia and Doe in their individual capacities.  Because all of
the defendants named in Count I have been dismissed, Count I is
dismissed in its entirety.


    B.  Constitutional Claims (Counts II through IV)

    The employees raise qualified immunity as to Whiskeys 20's
claims that they violated the Equal Protection Clause (Count
II), the Fourteenth Amendment's Due Process Clause (Count III),
and the Fourth Amendment (Count IV).  In the alternative, the
employees argue that Whiskeys 20 fails to state claims for
relief under Federal Rule of Civil Procedure 12(b)(6).
Application of the defense of qualified immunity is a two-step
analysis in which it is first determined whether the facts,
taken in the light most favorable to the plaintiff, show that

the defendant violated a constitutional right.  Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014).  Therefore, for both Rule 12(b)(6) and the defense of qualified immunity, the court determines whether Whiskeys 20 has stated a constitutional violation.

### 1. Class-of-One Equal Protection (Count II)

Whiskeys 20 alleges that the employees treated it differently from similarly-situated Manchester bars by subjecting it to excessive investigations and penalties not imposed on those other bars.  The employees argue that Whiskeys 20's class-of-one claim is barred by Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008).[9]

"The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government."  Davis v. Coakley, 802 F.3d 128, 132 (1st Cir. 2015).  The Supreme Court has recognized a "class-of-one" equal protection claim where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the

---

[9] Whiskeys 20 argues that the employees failed to sufficiently develop their argument that its class-of-one equal protection claim fails, thereby waiving the argument.  The court disagrees and will address the argument.

difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

In Engquist, the Supreme Court held that class-of-one equal protection claims cannot be sustained when they challenge "forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments . . . [in which] treating like individuals differently is an accepted consequence of the discretion granted." Caesars Mass. Mgmt. Co. v. Crosby, 778 F.3d 327, 336 (1st Cir. 2015). While Engquist was decided in the context of public employment decisions, the Supreme Court hypothesized that a class-of-one equal protection claim could not be used to challenge speeding tickets issued by law enforcement officers to some speeders but not others:

> [A]llowing an equal protection claim on the ground that a [speeding] ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action.  It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

Engquist, 553 U.S. at 603-604.  Similarly, in Crosby, the First Circuit held that a class-of-one equal protection claim challenging a report about a casino operator's suitability was inappropriate under Engquist where the casino licensing board was provided "broad discretionary judgment." Crosby, 778 F.3d

at 337 ("The possibility of mandating or deriving a baseline against which to assess a claim of treating seemingly similarly situated individuals differently, . . . is in fact even further from possibility in casino licensing than in public hiring. . . .  [T]he virtually plenary discretion that defines the state activity places this case squarely within the Engquist rule limiting class-of-one redress.") (citation and quotation marks omitted).  In other words, regulatory decisions to issue licenses are, generally, highly subjective, discretionary decisions.  In these cases, class-of-one equal protection claims cannot be sustained.  See id.

Like the casino licensing board discussed in Crosby and the hypothetical law enforcement officer described in Engquist, the decisions made by the Commission as to licensing and enforcement are discretionary and highly subjective.  Within certain bounds, the Commission may investigate license applicants and holders, enforce and punish violations of New Hampshire's liquor regulations, and determine whether any license may be renewed. See RSA 179:57, I; RSA 178:3, XI.  For example, RSA 179:57, I and RSA 178:3, XI, dictate that Commission investigators and officials conduct "frequent" inspections and permit the exercise of subjective judgment about licensing renewals.  It is otherwise left to the Commission's and its investigators' subjective judgment to determine the timing, frequency, and

scope of authorized inspections.  Similarly, RSA 179:57, I, and
N.H. Code Admin. R., Liq. ("Liq.") 603.02 provide the Commission
with discretion to determine what penalty to impose if
violations are found after an investigation.

Given this regulatory structure, investigations by the
Commission, as well as the penalties that may arise from any
violations found, are the types of state action that, by their
nature, involve "discretionary decisionmaking based on a vast
array of subjective, individualized assessments."  See Crosby,
778 F.3d at 336.  Therefore, Whiskeys 20's class-of-one equal
protection claim on the ground of disparate treatment as to
investigations and penalties imposed by the Commission cannot be
sustained.  See id.  For those reasons, the court dismisses
Count II of the Amended Complaint as against the employees.


2. Procedural Due Process (Count III)

Whiskeys 20 contends that the employees violated its right
to procedural due process under the Fourteenth Amendment.  A
procedural due process claim requires the plaintiff to show that
it has a protected property interest and that the defendants
deprived it of that interest without due process.  Miller v.
Town of Wenham, Ma., 833 F.3d 46, 52 (1st Cir. 2016).  The
employees argue that Whiskeys 20 does not have a protected

property interest and that, even if it did, it was not deprived
of the property interest.


a. Existence of Property Interest

Whiskeys 20 asserts that it has a protected property
interest in the renewal of its liquor license.  "Property
interests are created and defined by state law." Frank v. City
of Manchester, No. 9-CV-389-PB, 2011 WL 3489888, at *3 (D.N.H.
Aug. 10, 2011) (citing Leis v. Flynt, 439 U.S. 438, 441 (1979)).
To have a protectable property interest, "a person clearly must
have more than an abstract need or desire for [the benefit].  He
must have more than a unilateral expectation of it.  He must,
instead, have a legitimate claim of entitlement to it." Bd. of
Regents v. Roth, 408 U.S. 564, 577 (1972).

"Permissive" wording in a statute that authorizes the grant
or denial of a license suggests that an applicant for the
license has a limited or no protectable property interest in it.
See Chongris v. Bd. of Appeals, 811 F.2d 36 (1st Cir. 1987)
(holding that applicant for "common victualler's license" had no
protectable interest where statute stated licensing authorities
"may" grant licenses and that authorities had discretion to
determine whether license was warranted by "the public good");
see also Scott v. Village of Kewaskum, 786 F.2d 338, 340 (7th
Cir. 1986) ("To the extent a request [for a license] appeals to

discretion rather than to rules, there is no property."). Accordingly, it is "a rare case in which an application for a license that the government has discretion to grant or deny will give rise to a property right protected by the due process clause." Frank, 2011 WL 3489888, at *3.

RSA chapter 178 provides the Commission with discretion in deciding whether a liquor license may be renewed and in determining what facts are relevant to its decision.  Under RSA 178:3, XI, "[t]he commission may consider the licensee's record of violations, the manner in which the licensee has operated during the term of the license, the effect of the license on the neighborhood or community, and any other facts presented at the renewal hearing in determining whether to renew the license." Considering the permissive wording of RSA 178:3, Whiskeys 20 does not have a protectable property interest in the renewal of its liquor license sufficient to sustain its procedural due process claim in this case.

Whiskeys 20 argues that, in Vars v. Citrin, 470 F.3d 414 (1st Cir. 2006), the First Circuit found that holders of liquor licenses in Rhode Island have some protectable property interests in them.  In Rhode Island, however, the renewal of a liquor license is presumed: "[A] holder of a [liquor license] who applies prior to November 15 of the year in which his license expires is prima facie entitled to a renewal thereof."

Beacon Restaurant, Inc. v. Adamo, 103 R.I. 698, 705 (1968)
(holding that Rhode Island liquor licenses have "some of the
aspects of a property right").  Conversely, New Hampshire law
provides that "[t]here shall be no presumption that any liquor
license shall be renewed."  RSA 178:3, XI.

Whiskeys 20 contends, however, that under RSA 178:3, XI,
the Commission "must" renew a license if the applicant "meets
all of the current requirements for the issuance of a license."
Doc. 25 at 16.  Whiskeys 20 misreads the statute.  RSA 178:3,
XI, states that a license "shall not" be renewed "unless the
licensee meets all of the current requirements for the issuance
of a license."  As such, the Commission must deny a liquor
license renewal if the applicant fails to meet the current
requirements for issuance, but it need not grant renewal if the
requirements are met.  In other words, meeting the current
requirements for issuance of a liquor license is a necessary
condition for renewal, but meeting those requirements does not
guarantee renewal.

In any event, the Commission has significant discretion in
determining whether the current requirements for issuance are
met and, therefore, in determining whether any license may be
renewed.  For example, one condition for the issuance (and
therefore renewal) of a license is that the Commission is
"satisfied" that "[t]he proposed location of the business is an

22

appropriate one, considering the nature of the business, the
nature of the surrounding neighborhood, and the number of
similar businesses in that neighborhood."  RSA 178:3, VII.  The
Commission must also be "satisfied" that "the applicant is of
sufficiently good character to leave no substantial doubt that
the proposed business shall be operated in strict accordance
with all applicable state and federal alcoholic beverage control
laws and rules."  Id.

For those reasons, the applicable statutes do not create a
"legitimate claim" to the renewal of Whiskeys 20's liquor
license.  Rather, the Commission is provided broad discretion in
determining whether any license warrants renewal.  Because
Whiskeys 20 does not have a protectable property interest in the
renewal of its liquor license, its procedural due process claim
based on delayed renewal or non-renewal must be dismissed.  See
Roth, 408 U.S. at 577.


b.  Deprivation of Property Interest

The employees also argue, in the alternative, that Whiskeys
20's procedural due process claim is insufficient because, even
assuming that it has a protected property interest in its liquor
license, it has not alleged a deprivation of its rights without
due process.  Because Whiskeys 20 does not have a protected
property interest, there is no need to address the alternative

position of the employees.  Whiskeys 20's procedural due process
claim (Count III) is dismissed as to the employees.


      3.  <u>Fourth Amendment (Count IV)</u>

Whiskeys 20 alleges that the employees violated the Fourth
Amendment by conducting warrantless searches.  The employees
assert that Whiskeys 20 has failed to allege any specific
searches or seizures that occurred.  They also argue that no
warrant is required to conduct an administrative search.

In response, Whiskeys 20 argues that employees Elliot and
Cutting entered Whiskeys 20 on September 29, 2016, "for no
purpose other than to threaten" Svoleantopoulos.  Doc. 25 at 19-
20 (citing Doc. 13 ¶ 49).  Whiskeys 20 contends that Elliot
conducted "illegal surveillance" that evening and that he
entered again to provide Whiskeys 20 two verbal warnings.  Doc.
25 at 20.

"The right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated . . . ."  U.S. Const. amend. IV.
"A search within the meaning of the Fourth Amendment occurs
whenever the government intrudes upon any place and in relation
to any item in which a person has a reasonable expectation of
privacy."  United States v. Moss, 936 F.3d 52, 58 (1st Cir.
2019).

### a.  External Surveillance and Public Spaces

Not every surveillance or entrance into a building is a search within the meaning of the Fourth Amendment.  See Katz v. United States, 389 U.S. 347, 350-51 (1967).  The Fourth Amendment does not preclude the type of external surveillance that is alleged in the Amended Complaint.  See California v. Ciraolo, 476 U.S. 207, 213 (1986) (concluding that visual surveillance of a property from a public space is not a "search" under the meaning of the Fourth Amendment).  As to Elliot's entries into the business premises to observe or to provide Whiskeys 20 or Svoleantopoulos "verbal warnings," the claim is also insufficient.  The observations that led to the "verbal warnings" occurred near a "hallway floor by the bathroom," which would be a public area of Whiskeys 20 for which Whiskeys 20 has no reasonable expectation of privacy.  See Katz, 389 U.S. at 351 ("[T]he Fourth Amendment protects people, not places.  What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

### b.  Administrative Search Exception

Even if Elliot or Cutting entered a space in which Whiskeys 20 held a reasonable expectation of privacy to observe or to

provide Svoleantopoulos with "verbal warnings,"[10] the
administrative search exception to the warrant requirement
applies.  Administrative searches or seizures pursuant to a
regulatory scheme that meets the Fourth Amendment's standards
are exempt from the warrant requirement.  See United States v.
Maldonado, 356 F.3d 130, 134-35 (1st Cir. 2004).  Such a
regulatory scheme must meet a three-prong test to be reasonable
under the Fourth Amendment: "First, there must be a substantial
government interest that informs the regulatory scheme pursuant
to which the inspection is made.  Second, the warrantless
inspections must be necessary to further the regulatory scheme.
Finally, the implementation of the statutory inspection program
must provide a constitutionally adequate substitute for a
warrant."  See State v. Gness, 166 N.H. 1, 4-5 (2014);
Maldonado, 356 F.3d at 135 (noting the same criteria).

Whiskeys 20 does not contest that New Hampshire has a
substantial government interest in regulating establishments
that serve liquor, and the New Hampshire Supreme Court has
already provided persuasive reasoning in support of the
necessity of warrantless administrative inspections under New
Hampshire's liquor regulation scheme.  "Requiring investigators

---

[10] While the observations leading to the issuance of the
verbal warnings occurred in a public area, the Amended Complaint
does not allege where Elliot was when he provided the verbal
warnings themselves to Svoleantopoulos.

to obtain a warrant before inspecting a licensee's commercial premises or records would impede the inspectors' abilities to detect violations of state liquor laws and to quickly and efficiently investigate wrongdoing that may pose a threat to public safety."  Gness, 166 N.H. at 5 (quoting In re Morgan, 114 N.H 44, 50 (1999)).  Therefore, warrantless searches in the liquor industry "allow investigators to quickly investigate potential wrongdoing, and deter statutory violations."  Gness, 166 N.H. at 6.

Finally, the New Hampshire Supreme Court has also persuasively explained that Commission investigators do not have unlimited discretion in their searches and are subject to limitations sufficient to be a substitute for a warrant.  See id. at 7-8 ("RSA title XIII provides articulable guidelines that limit investigators' discretion during inspections. . . .  By detailing the conditions that constitute license violations, the statute guides investigators during both annual inspections and premises checks.").  In this case, the alleged illegal search and seizure involved an entry during which Elliot provided a verbal warning to Svoleantopoulos about a potential violation of New Hampshire's liquor code and regulations.  The alleged intrusion was for a minimal duration and a limited purpose that conformed to RSA title XIII and the liquor code.  See Liq. 602.01(b) ("Upon detecting conditions which could cause or

otherwise lead to violations, the investigator shall discuss the problem and corrective action with the person in charge at the licensed business, and issue a notice and record of agency instruction.").

### c. Motive

Whiskeys 20 contends that Elliot and Cutting did not enter on September 29 to provide Svoleantopoulos warnings or to conduct a legitimate investigation.  Rather, it asserts that Elliot and Cutting wanted to retaliate against Whiskeys 20 or Svoleantopoulos for filing complaints about Elliot.  An officer's subjective motivations, however, are irrelevant to whether a warrantless search or seizure is objectively reasonable under the Fourth Amendment.  See, e.g., Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006) ("The officer's subjective motivation is irrelevant."); United States v. Favreau, 886 F.3d 27, 30 (1st Cir. 2018) ("[The officers'] ulterior motive is of no consequence under the Fourth Amendment.").

### d. Other Grounds

As to any other Fourth Amendment violation that Whiskeys 20 sought to allege, the Amended Complaint is too vague to state a claim.  The Amended Complaint states that unspecified defendants

conducted "numerous searches and inspections" of Whiskeys 20 and that these defendants "upon information and belief" "acted without good faith and without reasonable belief that probable cause existed for the searches and inspections."  Doc. 13 ¶¶ 160, 162.  These general statements fail to provide adequate notice to the court and the defendants about the factual basis for Whiskeys 20's legal claims.

For the foregoing reasons, Count IV of the Amended Complaint is dismissed.

### C. State Law Tort Claims (Counts V through VII)

The employees contend that the court should decline to exercise supplemental jurisdiction over the state law tort claims (Counts V through VII) if the court dismisses the federal claims in this case.  They also contend, in the alternative, that they are entitled to official immunity under RSA 99-D:1 as to the state law counts and that the state law counts fail to state claims upon which relief can be granted.

#### 1. Supplemental Jurisdiction

Although the court has dismissed all the federal claims brought against the employees, it has not dismissed the federal claims as against the City of Manchester, the Manchester Police Department, or their officers and employees.  Because at this

point federal claims remain pending, it is not appropriate to decline supplemental jurisdiction.  See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which is has original jurisdiction.").

### 2.  Official Immunity

Under New Hampshire law, state officials are immune from liability "for decisions, acts or omissions that are: (1) made within the scope of their official duties while in the course of their employment; (2) discretionary, rather than ministerial; and (3) not made in a wanton or reckless manner." Farrelly v. City of Concord, 168 N.H. 430, 437 (2015); see also RSA 99-D:1 (adopting a statutory official immunity for all state officers and employees).  The employees assert that any acts or omissions by them were "within the scope of their official duties while in the course of their employment," were discretionary, and were "not made in a wanton or reckless manner."  See Farrelly, 168 N.H. at 437.  The plaintiffs[11] object, arguing that "Counts V-VII all allege facts that demonstrate [these] Defendants acted in a 'wanton or reckless manner' when, among other things, they

---

[11] Whiskeys 20 is the plaintiff as to Count V, while Svoleantopoulos and Sweeney are the plaintiffs as to Counts VI and VII.

conducted warrantless, open-ended inspections and improper compliance checks of Whiskeys 20's premises."  Doc. 25 at 21.

The facts of the Amended Complaint, taken as true, establish that the employees' acts or omissions were "made within the scope of their official duties while in the course of their employment" and were "discretionary, rather than ministerial."  See Farrelly, 168 N.H. at 437-40.  As to wantonness or recklessness, the inspections of Whiskeys 20 that are sufficiently identified in the Amended Complaint were not improper.

The plaintiffs also allege that the employees caused them substantial damages by delaying renewal of Whiskeys 20's liquor license while the violations that had been noticed were being reviewed.  Those violations were ultimately dismissed.  The Amended Complaint contradicts the plaintiffs' argument as the Commission extended Whiskeys 20's license so that it did not lapse during the investigation.  Furthermore, once the Commission learned that its principal witness had recanted his statements, it rescinded its allegations.

The other allegations of misconduct in the Amended Complaint similarly fall outside the scope of "wanton" or "reckless".  For those reasons, the employees are entitled to official immunity as to the state law tort claims: Count V (tortious interference), Count VI (intentional infliction of

emotional distress), and Count VII (negligent infliction of emotional distress).  Those claims are dismissed as against the employees.

### Conclusion

For the foregoing reasons, the motion to dismiss (doc. no. 22) by the Commission and employees is granted.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge


September 17, 2020

cc: Counsel of Record.